IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID K. MITSOFF, | : | Case No. 3:12-cv-46 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THE CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and §1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff David Mitsoff ("Plaintiff") not "disabled" within the meaning of the Social Security Act and therefore unentitled to Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 14), the administrative record (doc. 9),[2] and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

# I.  BACKGROUND

## A.  Procedural History

Plaintiff filed an application for SSI in September 2007, asserting that he has been under a "disability" since August 29, 2007.  PageID 221-32.  Plaintiff claims he is disabled due to neck pain, back pain, right leg pain, and a lack of feeling in both arms.  PageID 295.

Following initial administrative denials of his application, an administrative hearing was conducted before ALJ Amelia Lombardo in August 2010.  PageID 122-160.  On January 13, 2011, ALJ Lombardo issued a written decision, concluding that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act.   PageID 97-109.

Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since September 26, 2007, the application date (20 CFR § 416.971 *et seq.*);

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with residual effects of cervical and lumbar surgery (20 CFR § 416.920 (c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and 416.926);

4. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR § 416.967(b) with the following additional limitations: occasional stooping, crouching, kneeling, or crawling; occasional overhead reaching bilaterally; and limited to frequent fine manipulation with the right dominant hand;

5. The claimant is unable to perform any past relevant work (20 CFR § 416.965);

6. The claimant was born [in] 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR § 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR § 416.964);

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2);

9. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.969 and 416.969(a)); [and]

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 26, 2007, the date the application was filed (20 CFR § 416.920(g)).

PageID 100-09.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 90-93; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on February 10, 2012. Doc. 1.

## B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified that he is 5'11" tall, and weighs 220 pounds. PageID 125. He lives with his mother and his girlfriend in his mother's house. PageID 135.

Plaintiff injured his neck and back in 2005 by falling off the roof of his mother's house. PageID 127. In 2006, Plaintiff had neck fusion surgery; in 2009, he had lumbar fusion surgery. PageID 128, 130. He testified that he experiences occasional numbness in his leg, and back pain

daily.  PageID 130.  He also testified that he has difficulty sleeping because of his need to frequently change positions to be comfortable.  PageID 140-41.

Plaintiff estimated that he can sit for approximately 20-30 minutes, and stand for one hour.  PageID 132, 138.  He testified that he has difficulty raising his arms, and estimated the most he can lift is 10 pounds.  *Id*.  Although Plaintiff is able to do some household chores, his girlfriend does the laundry, shopping, yard work, and caring for their pets.  PageID 133-35.  Plaintiff testified that he enjoyed playing video games in the past, but is unable to play them now because of numbness in his hands.  PageID 134.  He also stated that he is unable to go to the grocery store because he cannot walk the aisles.  PageID 133-34.  He occasionally drives, but cannot tolerate sitting in the car for long periods of time.  PageID 138-39.

### C.  Vocational Expert Testimony

Brian Womer, a vocational expert ("VE"), testified at the hearing.  PageID 156-59.  The VE testified that a hypothetical individual with the claimant's vocational profile and RFC, as provided by the ALJ, could perform as many as 14,000 jobs at the light level of exertion, and as many as 5,400 sedentary jobs in the Dayton area.  PageID 157-58.  Examples of jobs at the light level include small parts assembler and assembly machine tender; examples at the sedentary level include food order clerk and polishing machine operator.  PageID 158.

## II. APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478

F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Id.*

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may
result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920. Although a dispositive finding at any step ends the ALJ's

review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.  OPINION AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs and the administrative decision, *see* doc. 11 at PageID 758-68; doc. 14 at PageID 786-89; PageID 99-108, and the Court will not repeat them here.  Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, Plaintiff argues the ALJ erred by rejecting the opinion of his treating physician, Matthew O'Connell, M.D., and instead favoring the opinions of consultative examiner Damian Danopulos, M.D., and non-examining, record-reviewing state agency physician Diane Manos, M.D.  *See* doc. 11 at PageID 601-08.

Plaintiff's assignment of error stems from written reports submitted by Dr. O'Connell in 2008 and 2010. In April 2008, Dr. O'Connell opined that Plaintiff's impairments affect his ability to stand/walk, lift/carry, and work. PageID 601. Specifically, Dr. O'Connell opined Plaintiff can only occasionally carry 5 pounds; is markedly limited in his ability to push, pull, reach, handle objects, and perform repetitive foot movements; and is unemployable based upon his impairments, education, and past work experience. *Id*.

In July 2010, Dr. O'Connell indicated that, since treatment began in September 2007, Plaintiff's spinal and orthopedic pain have been uncontrollable. PageID 737-45. Dr. O'Connell noted that Plaintiff has had multiple surgeries, prolonged physical therapy, no improvement in his condition, and "regression in some areas." PageID 737, 739. He also noted that his opinion is based upon several MRIs and a positive EMG for nerve damage. *Id*. Dr. O'Connell stated Plaintiff's spinal-ortho surgeons and neurosurgeons "have exhausted treatment to control [Plaintiff's] paraspinal disc/bone disease." *Id*. Additionally, he reported Plaintiff's paraspinal pain to be a limiting factor, and noted, "[f]rom prior to seeing me, [Plaintiff's] back has been a progressive failure of interventions both conservative, like PT/pain blocks, and surgeries." PageID 738, 741. Furthermore, Dr. O'Connell opined "[Plaintiff] is unemployable based on his physical restrictions" and "[m]edicine to date has been unable to 'fix' him to a reasonable employable state." PageID 737, 740-41.

Also, in July 2010, Dr. O'Connell completed an RFC questionnaire, and opined Plaintiff cannot sit, stand, or walk more than one hour daily, and cannot lift more than 10 pounds occasionally. PageID 742-45. Dr. O'Connell stated that Plaintiff cannot bend, twist from side to side, reach above shoulder level, squat, kneel, climb stairs, or climb ladders/scaffolding. *Id*. Dr.

O'Connell also indicated Plaintiff requires complete freedom to rest frequently without restrictions, and cannot stay in one position for longer than 30-40 minutes. *Id.*

The ALJ determined Dr. O'Connell's opinion "cannot be given controlling or even deferential weight" because his "conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record." PageID 104. Conversely, the ALJ accorded "significant weight" to the opinion of Dr. Danopulos, and "great weight" to the opinion of Dr. Manos. Having reviewed the record and considered the parties' arguments, the Court finds the ALJ's decision in this regard to be unsupported by substantial evidence.

Social Security regulations require an ALJ give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in [the claimant's] case record…." 20 C.F.R. § 416.927(c)(2). Even assuming that a treating physician opinion is not entitled to controlling weight, an ALJ must still consider the amount of weight that is appropriate by applying factors including the length of the treatment relationship, frequency of examination, specialization, and supportability of the opinion with the evidence of record. 20 C.F.R. §§ 416.927(c)(1)-(6). Furthermore, an ALJ must "always give good reasons in [his or her] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 416.927(c)(2).

Importantly, in weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 U.S. App. LEXIS 19206, at *36-37 (6th Cir. Aug. 27, 2009). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of

the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 U.S. Dist. LEXIS 11925, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings"). "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, No. 1:10-cv-398, 2011 U.S. Dist. LEXIS 90029, at *14 (S.D. Ohio June 9, 2011).

In August 2006, after conducting a consultative examination, Dr. Danopulos reported the following objective findings:

1) Status post cervical spine discectomy and decompression plus interbody fusion at C5-C6 with current chronic pain with satisfactory surgery;
2) Right hip arthralgias;
3) Right knee arthralgias;
4) Right ankle discomfort with right ankle arthralgias;
5) Bilateral shoulder arthralgias; [and]
6) Lumbo/sacral spine arthalgias.

PageID 451. Although Dr. Danopulos opined "[Plaintiff's] ability to do any work-related activities is affected in a negative way from the chronic cervical spine pain which is triggered from his C5-C6 cervical discectomy for decompression and interbody fusion," he never offered an opinion regarding the level of restriction on Plaintiff's RFC caused by such an impairment. *See* PageID 445-51.

In according "significant weight" to Dr. Danopulos' opinion, the ALJ considered the length of time between his examination and the hearing, but nevertheless concluded "the record contains no evidence that the claimant's cervical impairment has deteriorated since [his] opinion

was rendered [in August 2006]." PageID 104. However, the ALJ's reasoning in this regard is unsupported -- if not completely contradicted -- by the record.

At the time of Dr. Danopulos' examination, Plaintiff's C5-C6 fusion surgery and post-surgical recovery had already occurred. However, since that time, the evidence shows that Plaintiff's neck and back impairments have, in fact, deteriorated. For instance, whereas an MRI from October 2006 showed Plaintiff's C7-T1 to be "normal," *see* PageID 604, an August 2010 MRI, as read by James Tstatalis, M.D., shows a "progression of disease at the C7-T1 level." PageID 748-50. In addition, in January 2009, Plaintiff underwent a second fusion and discectomy surgery, this time at the L5-S1 vertebrae. *See* PageID 631-33. Immediately prior to the operation, Plaintiff was diagnosed with "L5-S1 degenerative disk disease" and "[d]isk herniation with chronic low back pain" by two surgeons, Marcos Amongero, M.D., and Damian Lebamoff, M.D. *Id*.

The ALJ's reliance on Dr. Manos' opinion is similarly misplaced, as it suffers from the same deficiencies as Dr. Danopulos' opinion. Dr. Manos never examined Plaintiff, and only reviewed the record through February 2008. Dr. Manos then opined that Plaintiff had the RFC to occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk approximately 6 hours in an 8-hour workday; sit approximately 6 hours in an hour workday; push/pull without restriction; never climb ladders/ropes/scaffolds; and occasionally kneel, crouch, and/or crawl. PageID 585-92. However, Dr. Manos' review of the record did not include any of Dr. O'Connell's reports, recent MRIs, or Plaintiff's medical records leading up to and following his January 2009 discectomy and fusion surgery. As such, Dr. Manos' RFC finding -- that Plaintiff is capable of performing light work -- does not take into consideration a significant portion of the record. Moreover, the ALJ's decision to adopt such an RFC is unsupported by substantial evidence.

The opinions to which the ALJ gave significant weight do not account for Plaintiff's January 2009 L5-S1 fusion; Plaintiff's physical condition in the months prior to January 2009 which brought about the necessity for a second fusion surgery; the reported "progression of disease at the C7-T1 level" as shown by the August 2010 MRI; or any potential combined effect that a second fusion has on Plaintiff's RFC.  Instead of adopting the 2006 consultative examination findings, or the RFC assessment issued in 2008, the ALJ could have solicited the opinion of a medical expert, ordered an additional consultative exam, or sent the MRIs, surgical records, and other treatment records back to Dr. Manos for an updated assessment.  However, no such steps were taken.  Instead, the ALJ discounted Dr. O'Connell's opinion and formulated Plaintiff's RFC based upon her own lay interpretation of the raw medical evidence of record from March 2008 onward.

This Court has stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-00407, 2012 U.S. Dist. LEXIS 84504, *25-32 (S.D. Ohio June 19, 2012) (Deavers, M.J.); *Isaacs v. Comm'r of Soc. Sec.*, No. 1:08-CV-00828, 2009 U.S. Dist. LEXIS 102429, at *10 (S.D. Ohio Nov. 4, 2009) (Hogan, J.) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms'") (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).  *See also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [ALJ's RFC] determination").  Moreover, this Court has found

-11-

that an ALJ is not qualified to translate raw medical data, such as MRIs, into functional capacity determinations. *See Mabra*, 2012 U.S. Dist. LEXIS 84504, at *30-34 (citing *Roso v. Comm'r of Soc. Sec.*, No. 5:09CV198, 2010 U.S. Dist. LEXIS 28308, at *8 (N.D. Ohio Mar. 11, 2010) ("[T]he ALJ is simply not qualified to interpret the raw medical data in these MRI reports and no medical opinion in the record supports the ALJ's determination")). *See also Meadors v. Astrue*, 370 F.App'x 179, 183 (2d Cir. 2010) (holding that, although MRI results showed only mild degenerative changes of a claimant's lumbar spine, "the ALJ was not at liberty to substitute his own lay interpretation of that diagnostic test for the uncontradicted testimony of [the treating physician], who is more qualified and better suited to opine as to the test's medical significance").

The Court recognizes there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *See Deskin*, 605 F. Supp. 2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This, however, is not such a case. The ALJ impermissibly relied on her own interpretation of the medical data of record, and improperly substituted her interpretation in place of the opinions of Plaintiff's treating physician. Under these circumstances, the ALJ's RFC determination is unsupported by substantial evidence. Because the ALJ improperly relied on this determination to conclude that Plaintiff can perform a number of jobs in the national economy, remand is necessary. *See Mabra*, 2012 U.S. Dist. LEXIS 84504, at *30-34.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Here, a judicial award of benefits is unwarranted because the record does not show that "proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking," as required for a judicial award of benefits in the Sixth Circuit. *Id.*

## IV.  RECOMMENDATION

For the foregoing reasons, the Court finds that, as more fully explained above, the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed and remanded to the Commissioner of Social Security under the Fourth Sentence of 42 U.S.C. § 405(g). *See id.* at 173-76.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED;**

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

January 24, 2013 　　　　　　　　　　　　　　　　　　　　**s/Michael J. Newman**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).